UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PETR TORCIK,

                Plaintiff,

-against-

THE CHASE MANHATTAN BANK, INC.,
and DOES 1-10,

                Defendants.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 02-CV-5994 (FB)

*Appearances:*
*For the Plaintiff:*
PETR TORCIK, *pro se*
156 Duncan Ave., Apt.# 5
Jersey City, NJ 07306

*For the Defendants:*
DARA L. ROSENBAUM, ESQ.
Quirk & Bakalor, P.C.
845 Third Ave., 15th Floor
New York, NY 10022

**BLOCK, District Judge:**

       Plaintiff, Petr Torcik ("Torcik"), proceeding *pro se*, brings this diversity action against defendants, The Chase Manhattan Bank, Inc., and ten unnamed bank employees (collectively "Chase"), and raises claims of tortious interference with contractual relations and negligence. Chase moves for summary judgment on the ground that Torcik has failed to adduce sufficient evidence to establish essential elements of those claims. For the following reasons, the Court grants the motion.[1]

---

[1] Torcik asks that the Court appoint counsel to represent him; he made the same request to Magistrate Judge Bloom, who denied the request on the grounds (1) that he has twice retained counsel and then terminated their services, and (2) that his claims are not likely to be of substance. The Court denies the request for the same reasons.

## BACKGROUND[2]

### I

On March 3, 1999, Vladamir Stepanik ("Stepanik") entered into a contract with CityNet Ltd. ("CityNet"), a Czech corporation. Under the contract, CityNet agreed to provide a $4 million line of credit, the proceeds of which were to be used "for business activities in connection with the development of the company ACTIVITY ECOP." Rosenbaum Aff., Ex. G.[3] Although later incorporated under New York law, the status of Activity ECOP at the time the contract was executed is unclear. Stepanik claims to have signed the contract "on behalf of Torcik's Activity ECOP" and "confirm[s] that Torcik was the primary party of interest of the contract." Stepanik Aff. ¶ 2.[4]

The contract with CityNet provided that "the debtor shall draw credit in a singular payment into a bank account, the number of which shall be communicated in writing to the creditor at the latest 30 days before the request for drawing of credit." Rosenbaum Aff., Ex. G. On November 13, 1999, Torcik and Stepanik went to a Chase

---

[2] The Background is taken from Chase's Rule 56.1 Statement, the material supporting that statement, and Torcik's numerous submissions to the Court. Although Chase provided him with the required notice to *pro se* litigants opposing motions for summary judgment, see Local Rule 56.2, Torcik did not submit a Rule 56.1 Statement. Because he is proceeding *pro se*, however, the Court will consider Torcik's submissions to the extent that they are based on personal knowledge or otherwise admissible evidence. The facts presented are either undisputed or, if disputed, stated in the light most favorable to Torcik.

[3] The English version of the contract has not been certified as an accurate translation of the original Czech document; however, the Court will, again in light of Torcik's *pro se* status, consider it.

[4] Stepanik is not a party to this action; in his affidavit, he asks to be added as a plaintiff. That request is denied.

branch in Staten Island to add Stepanik as a signatory to Torcik's account, which had been opened on September 7, 1999; the ostensible purpose of adding Stepanik to the account was to allow the proceeds of the CityNet contract to be deposited in the account.

During his November 13 visit, Torcik gave his Social Security number to a Chase employee, who called a third-party verification service to confirm Torcik's identity. During the call, the employee misread the number; Torcik tried to correct her, but she cut him off. Torcik told the Chase employee his Social Security number was issued in Mississippi in 1998; the verification service told her that the number she had read was issued in Arizona in 1980. Because the information did not match, a notation that Torcik was a "fraud suspect" was placed in his account profile. As a result, Torcik's individual account was not converted to a joint account; Torcik also had problems using his debit card between November 13 and 23, 1999. On November 17, 1999, Chase sent Torcik a letter indicating that his account would be closed on November 29, 1999; however, the account remained open until Torcik closed it in August 2000.

Torcik did not tell anyone at Chase about the CityNet contract when he opened his account. Moreover, Torcik did not tell anyone at Chase about the contract during his November 13 visit; he told the teller only that "we have an important matter, a business matter that we need to resolve today." Rosenbaum Aff., Ex. E, at 146-47.

Jaroslav Post ("Post"), an official from CityNet, was with Torcik and Stepanik at the bank and heard the Chase employee accuse Torcik of fraud; he informed CityNet of the accusation. At Post's request, a CityNet executive, David Kopriva ("Kopriva"), came to New York to investigate. Before returning to the Czech Republic, Kopriva gave Stepanik

3

a letter, which, in translation, read as follows:

> [C]onsidering [the] limitations on your disposition right on [Torcik's account] at Chase Manhattan Bank and [b]earing in mind the bank's suspicion of the genuineness of your Social Security Card and considering the bank[']s internal suspicion of an attempt to defraud on your part, we hereby cancel the Contract on credit concluded in Prerov on May 3rd, 1999.

Pl.'s Aff. in Opp. to Dets.' Mot. at 26. CityNet further claimed that, by virtue of the cancellation, Stepanik was required to pay a fine of $150,000; negotiation of a new contract was conditioned on payment of the fine. On April 20, 2000, Kopriva wrote Stepanik "to remind you that even despite having made repeated requests, I have not yet received from you damages of the amount of USD 150.000 . . . arising from the contract on provision of credit," *id.* at 27; the fine remains unpaid. Torcik has offered no evidence of the net profits that would have been realized had CityNet not cancelled the contract.

## II

Torcik sued Chase for negligence, tortious interference with contractual relations, slander per se, libel per se and defamation of character; he alleged that "[a]s a result of the false assertion that Plaintiff was 'fraud suspects' Plaintiff was unable to fulfill their contractual obligations with CityNet and etc., under the terms of their contract [sic]." Compl. ¶ 15. He seeks compensatory damages of "not less than $4,000,000" and punitive damages of "no less than $8,000,000." *Id.* at 6.

Chase moved to dismiss the claims for slander, libel and defamation of character on the ground that they were barred by the applicable statute of limitations. On June 17, 2003, the Court granted the motion. *See* Mem. & Order of Jun. 17, 2003, at 3.

Chase also moved to dismiss for lack of jurisdiction, arguing that the amount in controversy was less than $75,000. The Court initially denied the motion because, based on the allegations of the complaint, it could not "conclude to a 'legal certainty' that [Torcik] would be entitled to less than the jurisdictional minimum of $75,000," *id.* at 4; however, when discovery revealed that Stepanik, not Torcik, was the party named in the contract with CityNet, the Court directed Torcik to show cause why the case should not be dismissed for lack of jurisdiction. *See* Mem. & Order of May 27, 2005.

## DISCUSSION

### I. Jurisdiction

To dismiss for lack of diversity jurisdiction, the Court would have to conclude "to a legal certainty that the claim is really for less than the jurisdictional amount [of $75,000]." *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938)). As noted in the show-cause order, such a conclusion might have been possible here because it appeared that Torcik was not a party to the CityNet contract; therefore, he could not have suffered damages when the contract was cancelled.

Stepanik's affirmation, which Torcik submitted in response to the show-cause order, changes the analysis. If, as he claims, Stepanik signed the contract as Torcik's representative, Torcik could theoretically be liable to CityNet even though he was not a named party to the contract. *See, e.g., J.P. Endeavors v. Dushaj*, 778 N.Y.S.2d 531, 533 (2d Dep't 2004) ("The general rule is that the undisclosed principal is also 'bound by contracts . . . on his [or her] account by an agent acting within his [or her] authority.'" (quoting

5

Restatement (Second) of Agency § 186) (alterations in original)). The Court notes that, although Stepanik signed on behalf of "Torcik's Activity ECOP," Stepanik Aff. ¶ 2, it does not affirmatively appear that Activity ECOP was a separate legal entity when the CityNet contract was executed.

Because it is at least possible that Torcik could be held liable for the $150,000 contractual fine, the Court cannot conclude to a legal certainty that his claims against Chase are for less than $75,000.[5] The Court therefore turns to Chase's motion for summary judgment.

## II. Summary Judgment

A court must grant summary judgment "whenever it determines that there is no genuine issue of material fact to be tried." *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) (citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

In considering a motion for summary judgment, the court must "resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 255). Where, however, the non-moving party bears the burden of proof at trial, the moving party need only "'show[]' – that is, point[] out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477

---

[5]The Court expresses no opinion as to whether such fines are permissible under Czech law, which would presumably govern the contract.

6

U.S. at 325. Upon such a showing, "the non-moving party must respond with 'specific facts showing that there is a genuine issue for trial.'" *Golden Pac. Bancorp. v. FDIC*, 375 F.3d 196, 200 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

Because Torcik is proceeding *pro se*, the Court is mindful of its obligation to liberally construe his submissions to raise the strongest arguments they suggest. *See Forsyth v. Federation Employment & Guidance Serv.*, 409 F.3d 565, 569 (2d Cir. 2005). Nevertheless, summary judgment is appropriate – even in an action by a *pro se* plaintiff – when "the moving party has submitted facts sufficient to show that the non-moving party's claim has no merit, and the non-moving party's attempts to rebut the movant's facts consist only of 'mere allegations or denials' of the facts asserted by the movant." *Id.* at 570 (quoting Fed. R. Civ. P. 56(e)).

## A. Tortious Interference with Contractual Relations

"The tort of inducement of breach of contract, now more broadly known as interference with contractual relations, consists of four elements: (1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff." *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993). Chase argues that Torcik has failed to adduce sufficient evidence to support those elements.

The Court agrees. Even assuming that Torcik could establish that he was Stepanik's undisclosed principal on the CityNet contract, and that he has suffered damages, he cannot establish elements (2) and (3). With regard to element (2), there is no

7

evidence that Chase knew about the CityNet contract; indeed, Torcik has affirmatively stated that he did not tell anyone at Chase about it. With regard to element (3), no reasonable jury could conclude that Chase intentionally induced Torcik either to breach the contract or to otherwise render performance impossible. Even viewed in the light most favorable to Torcik's, the facts establish, at best, that a Chase employee mistakenly misread Torcik's Social Security number and refused to correct her error; such acts and omissions do not even remotely suggest that she acted with the requisite intent.

Since Torcik has failed to offer sufficient evidence to support at least two of the elements of tortious interference with contractual relations, Chase is entitled to summary judgment on that claim.

## B. Negligence

"To sustain a claim for negligence, a plaintiff must show that the defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as a proximate result of that breach." *King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997) (citing, *inter alia*, *Solomon v. City of New York*, 66 N.Y.2d 1026 (1985)). Chase argues that Torcik has failed to establish these elements.

Courts in this circuit have held that a bank has "a duty to exercise reasonable skill and care in carrying out its activities for its customers." *Bank Brussels Lambert, S.A. v. Intermetals Corp.*, 779 F. Supp. 741, 747 (S.D.N.Y. 1991); *see also Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 667 (S.D.N.Y. 2000); *Colorado Capital v. Owens*, 227 F.R.D. 181, 188 (E.D.N.Y. 2005); *cf. Crossland Sav. Bank*, 111 F.3d at 259 (noting that district court had conceded existence of duty). The Court therefore assumes that Chase was under a duty to

use reasonable care in relaying Torcik's Social Security number to its verification service.[6] The Court further assumes that a reasonable jury could conclude that a refusal to correct an error in relaying such information constitutes a breach of that duty. *See Crossland Sav. Bank*, 111 F.3d at 259 ("[T]he assessment of reasonableness generally is a factual question to be addressed by the jury.").

Torcik's negligence claim nevertheless fails because he cannot establish the third element: proximate causation. To show proximate cause, "a plaintiff must establish that the defendant's negligence was a substantial foreseeable factor in bringing about his or her injury." *Johnson v. Bryco Arms*, 304 F. Supp. 2d 383, 395 (E.D.N.Y. 2004) (Weinstein, J.) (citing New York law). With regard to foreseeability, the test is "whether under all the circumstances the chain of events that followed the negligent act or omission was a normal or foreseeable consequence of the situation created by the [defendant's] negligence." *Mirand v. City of New York*, 84 N.Y.2d 44, 50 (1994). Thus,

> [w]hile the fact that a defendant did not foresee the precise manner in which the accident occurred will not excuse liability, if, with the benefit of hindsight, it appears highly extraordinary that the defendant's act should have brought about the harm, the act will not be considered a proximate cause.

---

[6]Under New York law, "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Greater N.Y. Auto. Dealers Ass'n v. Envtl. Sys. Testing, Inc.*, 211 F.R.D. 71, 82 (E.D.N.Y. 2002) (citing, inter alia, *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382 (1987)); *see also County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir. 1984) ("New York law holds that a negligence action seeking recovery for economic loss will not lie."). The Court suspects that Chase's duties to Torcik were, in large part, defined by some sort of customer agreement; however, since Chase has not relied on any such agreement, the Court will not address the effect of this so-called economic-loss rule on Torcik's negligence claim.

*Trojcak v. Javcon Machine, Inc.*, 795 N.Y.S.2d 345, 346 (2d Dep't 2005) (internal citations omitted). Although proximate causation is usually a question of fact for the jury, the issue may be decided as a matter of law when "only one conclusion may be drawn from the established facts." *See Bryco Arms*, 304 F. Supp. 2d at 395 (citing *Alexander v. Eldred*, 63 N.Y.2d 460 (1984)).

Here, as a matter of law, Chase's acts and omissions were not the proximate cause of the cancellation of the CityNet contract. The only reason that the Chase employee's accusation that Torcik was a fraud suspect led to the cancellation of the CityNet contract was that a CityNet official happened to be present to overhear the accusation and to report it to CityNet, which apparently deemed the accusation to be a material breach of the contract warranting its cancellation. This chain of events is outside the normal, forseeable consequences of the Chase employee's misreading of Torcik's Social Security number and subsequent refusal to correct her error.

Since the only conclusion to be drawn from the facts of this case is that Chase did not proximately cause the cancellation of the CityNet contract, Chase is entitled to summary judgment on Torcik's negligence claims.

## CONCLUSION

Chases's motion for summary judgment is granted and Torcik's complaint is dismissed.

FREDERIC BLOCK
United States District Judge

Brooklyn, New York
September __7__, 2005

10